On behalf of the appellant, Mr. Michael A. Berry, and on behalf of the appellate, Mr. Nicholas R. Mitchell. Thank you, Mr. Berry. I'll present. Good morning. May it please the court. My name is Michael Berry, and I represent S.T. Neswold & Associates, Inc., the defendant appellant in this matter. This court has accepted three certified questions pursuant to Rule 308 for interlocutory review. The first two questions concern whether an insurance producer has a duty to comply with Section 12 of the Illinois Condominium Property Act in the procurement of a policy of insurance for a condo association. The third question involves whether the director of insurance or travelers, the insurer who issued the policy in question, is a necessary party for the complaint that law alleges that the policy's approved limits for ordinance or law coverage were inadequate. In this case, the complaint was filed by the Condo Association alleging against my client, an insurance producer, that the policy that was procured failed to comply with Section 12 of the Condo Act. The policy that was issued by travelers and procured by my client, S.T. Neswold, included the replacement cost of the building and included $1 million for ordinance or law coverage. A fire occurred, and in order to comply with the village code requirements, as alleged in the complaint, totaled $1.3 million. Travelers paid off $1 million. However, there was a deficit of $300,000 as alleged in the complaint. Now, the Condo Association has alleged that there was a duty for the insurance producer to then comply with the Condo Act when it procured the policy of insurance. Now, it doesn't say specifically in Section 12 of the statute that there is a duty. Isn't that correct? I agree with that, Your Honor. And so we have to really look at the plain language to discern whether it's implied. Isn't that correct? Your Honor, I do agree that we need to look at the language of the statute. All right. And if we do that, if we focus for a minute on the wording in Section A, 12A, required coverage, no policy of insurance shall be issued or delivered to a condominium association. To whom is that directive applicable? Your Honor, it's our contention that it's not applicable to an insurance producer, that it's applicable to the Board of Managers for a condo association. But can the Board of Managers issue insurance to itself? Your Honor, I think that's a very good question. And the answer is? The answer is a condo association cannot issue it to itself. I agree with that. But with respect to delivering a policy of insurance, I disagree that it cannot deliver to itself a policy of insurance. It can renew a policy of insurance. It can renew, and that's within the Section 12A of the statute. Well, but if we construe this language as not applying to an insurance producer, then isn't this – aren't those words then superfluous? Judge, with respect to the words issue and deliver, I think it's the contention of the condo association that those are terms of art to be applied to the insurance industry. I think that's mistaken. If we look at the remainder of the Condo Act, the Illinois Condominium Property Act, it's 32 sections, and the whole purpose of the Condo Act is to govern condo associations. It's not to regulate the insurance industry. What's the title of Section 12? The title of Section 12 is insurance, procurement of insurance. So there's a big heading there. So if you're an insurance producer and you're going to supply insurance to the condo industry, a bunch of condominiums here in that business, and you know you're supplying it to a condo, you know there's a condo act out there and it's a statutory provision just like the vehicle code. Insurance producers are certainly familiar with the vehicle code, correct? I agree with that, Your Honor. So this is, you realize you're giving it, instead of you're not insuring an automobile, you're insuring a condominium association. And the Condo Act has this big heading that says insurance. That's no beacon to the industry that maybe I ought to read this? Judge, with respect, Your Honor, with respect to Section 12, I think if we look at it in the context of the entire Condominium Property Act, the word deliver, if we want to touch on that word, and I know Justice Dunoff is touching on that word. If you look at the word deliver, within the Condominium Property Act, the word deliver or a derivation thereof, deliver, deliveries, is utilized 26 times. How about issued? Issue is utilized throughout the statute as well, Your Honor. The word deliver, if we look to different sections of Section 9.1, which regards liens, it talks about the duty of a lien holder to execute and deliver to a unit owner. Section 15, which talks about the sale of property, speaks to the duty of every unit owner to execute and deliver such instruments. Section 18, which talks about the bylaws for the condo association, talks about the delivery of votes by the association, the delivery of the petition by the Board of Managers, and notice of the meeting should be delivered to the members of the board. Let's assume you're correct on deliver. What about issued? Because it says issued or delivered. You seemed to indicate before that the condo board cannot issue a policy of insurance to itself. Judge, Your Honor, what I would say to the word issue is that if we're using terms of art here in the insurance industry, an insurer is the one who would issue a policy of insurance. And that kind of transitions to our third question with regards to whether or not travelers is an indispensable party. It's our contention, however, that that word issue was not considered by the General Assembly as a term of art to be applied specifically to the insurance industry. Well, how did you arrive at that conclusion that it was not the intent of the legislature? Sure. The courts have held with respect to the Condo Act that the Condo Act is to regulate the creation and operation of Illinois condo associations. Within the Condo Act, there's no mention of the insurance producer within the entire Illinois Common Union Property Act. If we look at the board of managers, and there's section 18.4F, which talks about the duty of the board of managers. And one of the duties is to obtain adequate and appropriate amounts of insurance. There's no mention of insurance producer within the entire act. And then we're here today to say that if there was a duty for an insurance producer, it would be reasonable that that entity would be mentioned within the statute. Well, couldn't you argue that section 12 creates a dual duty? I disagree with that, Your Honor. I know that's the position that has been put forth by the condo association. But if we look at the Condo Act itself and what the statutory advises us to look at specifically at the statute, section 12A is written in the passive voice. There's no doer or actor. There's two clauses, and each clause, the subject thereof, is no policy. We don't get to a doer or someone with respect to who's issuing or delivering these policies of insurance until we go to the subsection 1 under there where it talks about the board of managers. And that's consistent when we look at the entire Illinois Common Union Property Act. If we're left without an actor in 12A, it's unreasonable to assign a duty to an insurance producer who's already governed by the Illinois Insurance Code. So are you saying that there are no other statutes that apply to insurance producers except the insurance code? They don't have to be concerned about anything else in any other statutes in our state? Judge, I'm not putting forth that position. However, what I am saying, the questions that are before us today is whether or not the Condo Act creates a duty to provide a Condo Act-compliant insurance policy. It's not the position of S.T. Neswell that there aren't endorsements for ordinance or law coverage. There are standard endorsements for that, and one was procured in this case for $1 million. What the Condo Association is saying is that you have to comply with this Condo Act statute. And if we actually look at the statute, it's unlike the Illinois Vehicle Code, which Justice Burke has mentioned, the Illinois Vehicle Code specifically refers to and mentions the Illinois Insurance Code. It directly refers to that, and it sets a minimum amount of requirements for the coverage for vehicles. Just as the Condo Act does.  The Condo Act does not set a minimum amount of requirement for what has to be obtained. But if you're insuring a particular condo, you know what the minimum amount is to insure, or shouldn't you, if you're a producer? I disagree, as that would- The producer, in this case, secured a $1 million policy. That was what was requested by the Condo Association. Oh, okay. The- in terms of the- if we look at the Illinois Administrative Code, it talks about- it speaks to the fact that a company- And this is within the Chapter 1, Department of Insurance, Part 754, Section 30, Subsection C, which talks about a company, and they're referring to an insurer, is not required to file rates on individual risks in this state where the development of the rate for the individual risk is dependent upon inspection of real property and the application of a schedule, the elements of which include ratio, hazard analysis, risk analysis, and classification of municipal fire defenses. So it's our position that if this Court were to read the Condo Act as creating a duty, it would directly conflict and contradict with this Illinois Administrative Code, which the Director of Insurance is entitled to enforce when endorsements and policies of insurance are issued in Illinois. In 2013, the Florida Appellate Court interpreted its version of the Condo Act in a similar legal context, determining that the provision regarding insurance in the Condo Act did not apply to an insurer. We prominently relied on this case, and I have copies here for the Court, if it likes, in our brief, for the proposition that the Condo Act in Florida and similarly in Illinois was not enacted to encumber the insurance industry. In the citizen's case, a policy of insurance was issued. It wasn't under the heading of association in that case? Not insurance, but under the general heading of association, correct? It was under the heading of association, Your Honor. Your Honor, I agree. Didn't the Court rely on that, that it was under the heading of association? Your Honor, it did, the Court did speak to the fact that it was under the association, but if we look at the actual language of the statute, it was Statute 718 under 11, which was entitled insurance. It said under B, Section B, every hazard insurance policy issued or renewed on or after July 1, 2004, to protect the condominium building shall provide primary coverage for, and one of the coverages to be provided was all portions of the condominium property located outside the unit. In the citizen's case in Florida, there was property outside the unit that wasn't covered by the policy that was issued by citizens. And the Condo Association alleged under the Florida Condominium Property Act that there was a duty for the insurer to comply with the Condominium Act in Florida. But what did subsection A say in that statute? Because didn't the Court read subsections A and B together to find no duty on behalf of the insurance company? Your Honor, I'll read subsection A. It says a unit owner controlled association shall use its best efforts to obtain and maintain adequate insurance to protect the association, the association property, the common elements, and the condominium property required to be insured by the association pursuant to paragraph B. And I do understand that the Court did read the statute in its totality, and I think that's a proper thing for this Court to do as well, because if we look at the entire Condominium Property Act, all the duties that are created by the 32 sections of this Condominium Property Act regard the operation of condominium associations and responsibilities for the board of managers or developers pre-turnover to a board of managers of how to operate a condominium association. Your Honor, we're not the legislature. I mean, clearly the legislature knows how to write a statute to say that the duty of the board of managers is this, because in 18.4.F they say what the duty is. In 12.A.2 they say what the duty is. In 12.A.3.D they say what the duties of the board are. And here, for whatever reason, the legislature did not take the opportunity to say it's the duty of the board of managers to secure a policy that complies with this, this, and this. They said no policy of insurance shall be issued unless it complies with these minimum standards. The subsection 12.A. does state that no policy should be issued or delivered. I agree with that, Your Honor. However, if we look further into that statute, it talks about the board of managers. Right in conjunction with the entire Condominium Property Act, which talks about the board of managers' duty to require adequate forms of insurance, the more reasonable interpretation of that is that it was the duty of the board of managers for the condo association to obtain the type of policy or the limits of that policy to which they thought was reasonable. But it still doesn't explain the use of issued or delivered. They actually don't even make sense, even if they're not words of art. Judge? If we interpret it that way. Your Honor, I agree that the Illinois legislator in the Condominium Property Act does not define issue or deliver. And what the court has held is that where there's an absence of statutory definitions indicating a contrary legislative intention, courts must, of course, assume that words contained in the statute have their ordinary and properly understood meaning. With respect to the word deliver, the general usage of that is to bring or hand over or leave for another person. That's a standard definition from the Webster Dictionary. Well, an insurance producer would do that, correct? Judge, an insurance producer could be one of the individuals who procures a policy of insurance. However, in this context, the word deliver, if we look at the rest of the act, is merely talking about handing over a policy of insurance. And when read in light of the Condominium Property Act, it's our contention that the Illinois legislator did not contend or did not anticipate that it would be applied to the insurance industry. And I think that's something that the Florida court, in its analysis, appreciated, is that there's already a heavily regulated insurance industry in Florida as well as in Illinois. And the director of insurance is provided under the law with the obligations to ensure that condominium associations, as well as every other industry, have policies that are procured pursuant to the Illinois Insurance Code. To add on the Condo Act, a piece of legislation that's 32 sections long that doesn't discuss an insurance producer at all and instead discusses the board of managers and its role 138 times the board of managers as mentioned within the statute, it's more reasonable to conclude that when the legislator drafted section 12A1 of the legislation, that it intended that that be an obligation upon the board of managers for the condo association to obtain. Within section 12, it's also our position that we asserted in our briefs that the statute is so vague that it provides no guidance as to actually what is required. Unlike the bill code we've talked about, there are minimum requirements. So it's suspect whether or not there's an actual duty created even for the board of managers. And this was appreciated by at least by one state senator, William Hayne, in proposed legislation to amend section 12 to put a 5% minimum on ordinance or law coverage based on the coverage that's obtained for the building. Illinois is a highly regulated state for the insurance industry. And it's governed by the board of directors and administrative code. Based on the reading, the totality reading of the Illinois Condominium Property Act, which talks of... You can finish your quote. Thank you. It's more reasonable to conclude that this statute was put in place for a duty, if at all it exists, on the condo association, not an insurance producer. I would ask that this court find that there is no duty created by section 12 of the Illinois Condominium Property Act for an insurance producer. And if one should be found, that travelers, the insurer who issued the policy of insurance in this case, and the director of insurance be necessary parties. Thank you. Thank you, Mr. Barry. You will have time for rebuttal argument. Thank you. You're welcome. Mr. Mitchell, you may proceed. Mr. Mitchell, what's the purpose behind the Condo Act? It is to govern the overall maintenance and administration of condominium associations. And one of those issues that must be governed is the issuance of insurance. And as your honors have already alluded to, those three little words in that first section of section 12, no policy shall be issued or delivered, certainly suggests it to the plaintiffs, and intended by the legislature to make sure that no policy is issued or delivered to an association that doesn't maintain these certain minimum levels. But what is the Condo Act speaking of? Speaking of the board of directors of the Condo Act. They're the board of the condo, aren't they? Not necessarily. The Condo Act refers to the association as an entity throughout the act itself. Occasionally, it does reference what the board has to do. The board is just the managing arm of the association. And as the justices have alluded to today, section 12 actually has two different portions to it. One, where it references what policies may be issued or delivered, and secondly, what the board has to do in relation to those policies. For instance, that very first sentence says, no policy shall be issued or delivered, nor may policy be renewed. We think that this creates two separate duties, one duty for the board to obtain insurance, another duty for the insurance producers to deliver a policy. So who is required to get the insurance? The board is the entity that must actually obtain the insurance. We think this dual duty actually makes sense. It's a dichotomy of two different things. The board has no power to issue certain policies or to obtain certain policies unless there's a similar duty imposed upon the insurance industry to issue these policies. For instance, if no insurance company were ever agreeing to issue policies that maintain these certain minimums, the board has no ability to comply with their duties imposed by the act to maintain these certain minimum levels of insurance. So they have a duty. The board has a duty to provide insurance. They have a duty to obtain insurance. To obtain insurance. So if they request an amount that's lower than the amount that would cover any damage, how is it that the insurance producer should be held liable? Well, I think there's two prongs to that. One, there's certainly a possibility in certain instances where both the board and the insurance producer may both have violated the statute and both may be held liable for various causes of action. But secondly, the insurance producer has, I think, two bases for liability. One being the Conduct Act itself, which specifically says if you're going to issue a policy, it must maintain these certain minimum standards. Secondly, the Insurance Placement Act, which goes more towards the second certified question, which I don't believe the justices discussed much earlier. We think that the Insurance Placement Act also creates a duty for an insurance producer to, if you're going to provide insurance, you must do ordinary care and skill under the terms of the Placement Act. If you're going to issue policies to a condominium association, you must have at least a modicum of understanding as to what that association requires if you're going to comply with the Placement Act. So what if they say, you know, you should have a million and a half coverage on this condo? And the board says, no, we only want to get a million. So are you saying, okay, then we could vacate the act with respect to the board? What am I looking for? The duty under the Insurance Producers Act, and then we would then go to the Insurance Placement Act and say, well, he wasn't persistent enough or he didn't act properly in encouraging them to get 1.3 as opposed to 1 million? Well, the duties are certainly different under the Placement Act versus what the duty under the Condo Act says. And so I would concede that if they proposed a policy that was sufficient and the board said, no, we're not going to take this policy, then they satisfy their duty, certainly under the Placement Act. Whether they satisfy the duty under the – and the reason, Your Honor, is because if under the Placement Act they do ordinary care and skill. Yes. Okay, so say they satisfy their duty under the Insurance Placement Act by exercising ordinary care and skill. Now where do we go if we're looking for money from the insurance producer? Well, if we're applying the Condo Act – and these questions are difficult right now because they are hypothetical because we're so – not early, but we haven't completed the case yet. We haven't completed the discovery, so we don't know what actual communications took place between the parties. If under your hypothetical the insurance producer proposed a policy that was sufficient and the association refused to accept it, then one would argue that the insurance company would have a duty to either just not provide the policy whatsoever because of the terms of the Condo Act which say you must issue or deliver a policy of these minimum standards. I think the insurance company would have an obligation to just not issue that policy if they want to comply with the Condo Act because the Condo Act is very clear in the first sentence that no policy shall be issued or delivered. Subsequently in the Condo Act it says that the board shall procure certain policies. The board shall do this, the board shall do that. The legislature made no suggestion that the first sentence of being issued or delivered had any applicability to the board. Well, how do you respond to Consul's argument that we have a very comprehensive insurance code and that insurance companies and insurance producers are really governed pretty comprehensively by – and I believe it's his argument sounded to me like exclusively by the insurance code. Well, I'll concede that they are governed very substantively from the insurance code. I don't believe that that necessarily means that they cannot be subject to any other statute. So as Your Honor alluded to earlier, they are subject to the Motor Vehicle – or I'm sorry, the Illinois Vehicle Act. I think that there's nothing in the Condo Act which says that this cannot be applied to any insurance producer. And without any clear definition or any clear language saying that insurance producers are not included by the act, all we can do is read the terms that the legislature chose to use. And because they very specifically in the only instance in this section said no policy shall be issued or delivered as opposed to saying that the board may or may not do, I think that leads us to the only conclusion that the legislature intended to include the insurance industry in this language. Did they ever mention the insurance producer in the Condo Act? No, no. We'll concede that there's no reference to insurance producers in there whatsoever. Again, no. I don't think that that's definitive. Just because this case comes down to three simple words, issued or delivered, doesn't mean that we can ignore them or just look past them. There has to be some sort of meaning, and we can't. If we were to interpret that phrase to apply only to the board, I apologize, I forget which justice mentioned this, but it would be superfluous. There would be no reason to include that language. The legislature was very clear in pointing out in various portions of the act why or when it applies to specifically the board of directors. But if we read this as requiring a dual duty or if we give these words a literal interpretation and have them apply to insurance producers, aren't there some very serious policy implications? Doesn't that give insurance producers and insurance companies the ability to charge excessive rates to a condominium association? I think a lot of this was actually talked about in the Florida case. Insurers could decide not to issue any policies at all, so aren't the policy implications serious here? They could be. We won't know until it's completely determined whether or not this does apply. However, it wouldn't be the first instance in which a proper interpretation of a statute resulted in some sort of policy implications. Insurance rates rise anyways. Associations have an option to shop the market and find the best rates regardless of how you run or rule today. And as you alluded to in the Florida case, they did refer to those dire consequences. But that case is distinguishable on many facets, one being, as Justice Burke referenced earlier, that they base a portion of their holding on the fact that that section of the act was under a title called the association. Furthermore, they referenced the fact that in that case there was a specific language which said that the association shall use its best efforts to obtain insurance. That suggests to me that the legislature intended that the board only has to make its best efforts to obtain its insurance. Here, in the Illinois Condo Act, it doesn't include language like that. There's actually two sections. One, no policy shall be issued, not to use your best efforts to obtain insurance policy, but that no policy shall be issued. And then separately, that the board must procure directors and officers of policies or the board cannot renew certain policies. I think that those facts really differentiate and distinguish the case from Florida. How would this producer have known $1.3 million would have been sufficient as opposed to $1 million? Any sort of investigation, perhaps? A risk assessment. A risk assessment or maybe just a simple analysis or research of what codes have changed over the last however many years. So the burden would be on him, on the insurance producer, to do that? Yes, I think so, Your Honor. And not the condominium association? Not for determining the- Or the board of managers, I mean. Correct. And the reason for that is, you know, well, there's-if you could just give me one second, Your Honor. Could you state that question one more time? I'm not sure I completely- And not the board of managers, the duty. Correct. The duty should be on the insurance because they are in the industry, they have a much better way of procuring a policy or understanding what policies are available to an insurance company. This kind of goes to my point that those dual duties. The dichotomy makes sense because a board can only procure what an insurance company is willing to offer. And so a board has no greater ability to determine what scope has changed as far as what statutes are at issue, what coverage-I'm sorry, what zoning issues might have come up, what ordinance coverage might require. Why else would you hire an insurance agent or insurance producer if it's not for this exact purpose, which is to evaluate your needs, tell you what you need, and then go out and obtain a policy? Under the defendant's theory, an insurance producer is literally the absolute definition of nothing more than a middleman. If they're saying all we have to do is just give you the policy you asked for, then why couldn't the association or any other client go directly to the insurance company and say, hey, give me this policy? Wasn't that what we do as homeowners? We go to the insurance company. They may make a recommendation, but they may say a million and a half coverage, and you might say, you know what, I think a million is fine. So are we going to hold them responsible or no because we don't have an act? We don't have any legislation that requires a homeowner to do that. So how is it any different on a regular home than on a homeowners association? Because the Condo Act, and actually we're only limited to condominium associations here, not condo owners or homeowners. Why is the legislature protecting condo owners and not homeowners? At some point it's a little bit of speculation, I suppose, but if a condominium association, you have collective rights that are included from a bunch of different individuals, and they all have to rely on a board of directors or a board of managers to govern the actions of all their investments, their home, their livelihoods. And this has to do with covering the common areas, this insurance provision, correct? Correct. Not the individual union. Correct. Is the administrative code cited by opposing counsel in violation of this statute? I don't believe so. The administrative code essentially says, as I interpret it, I'll probably be the first to admit that I'm not an insurance lawyer, the insurance code, as I interpret it, says that if you're going to issue a policy, then here are the certain minimum things that you must do. For instance, if you're going to issue a policy here, you don't necessarily have to go out and do an inspection of the real estate before you actually issue the policy. Wouldn't you have to in this case? Yes, I think you would. But as the court in Florida alluded to, you know, they said that the easy thing to do, I'm paraphrasing obviously, I can give you the exact language if you'd like, they essentially said the easy thing to do in this case would just take the literal interpretation, take the words of the statute included, and just apply it. And if you're going to issue a policy to a condominium, here's what you have to do. That's exactly what this legislature said in this particular act, in the Condo Act. They're saying that if you were going to issue a policy to a condominium association, you need to issue it with these minimum standards. And so while the insurance code right now says that if you're going to issue a policy, you do not need to make a real estate, the short answer here is that insurance companies, if you're going to issue one to a condo, then you're going to have to make the inspection. But if you're not, you don't have to issue a policy to a condominium association. So there's no law that says every insurance company has to issue a policy. So they can still comply with the administrative code and just not issue a policy to the condos. But I think in the free market, there's going to be plenty of insurance companies that will see an opportunity here to actually issue these policies, and they'll take the necessary precautions to make sure they're abiding by the Condo Act, much the same way they do with the Vehicle Act. It doesn't matter that the Vehicle Code specifically references the insurance code to put insurance producers on notice that this is an issue with them? No. The Vehicle Code essentially provides minimum standards that must be met if you're going to insure vehicles. Similarly, the Condo Act requires minimum standards of what you're going to need to produce if you're going to issue a policy to condominium associations. It doesn't include dollar amount, and that's essentially all that this proposed Senate bill would do. It just creates a minimum dollar amount of 5% more of whatever your current property value is for purposes of this code coverage. It doesn't say who should cover it. It doesn't really clarify this issue one way or the other. All it does is it just gives insurance companies and associations clarity as far as what the minimum dollar amount is for this coverage. And if it's passed, then it even really further belies defendants' arguments that the insurance company isn't the intended target here. Because if there is a final dollar amount associated with it, then it's even less of an argument that the defendants can make that they don't have the wherewithal or the ability to come out and give dollar values to these different properties. Well, then maybe it's bringing the insurance code, the administrative code, in compliance with the statute if you have a specific dollar amount. You know, in the Vehicle Code, there's a specific dollar amount, so an insurance producer knows I've got to give this dollar amount more if they want it, no less. But the administrative code says we don't have to do a risk assessment, which is now the way you're arguing you don't have to do a risk assessment. But don't you have to go out there and look at the building, see if there's sprinklers, see what's going on with it before you insure this building if you're an insurance company or an insurance producer? Under your reading of the statute as it is now? Under my reading of the statute, the insurance company has an obligation to provide the minimum threshold level of coverage. Which are abstract and different for every kind, though. Agreed. I concede that. But the insurance company will do whatever they feel is – let me strike that – the insurance company will produce a policy that has to be compliant. If the insurance company chooses to come out and do a risk assessment and makes that determination, they can. If they choose to issue a policy without doing a risk assessment, at the risk of maybe not complying with the Condo Act, they're free to do that as well. It's essentially going to be a free market, and the insurance companies will do whatever they feel is necessary to comply with the Act. From the association's perspective, all they are concerned about is making sure that the individuals they hire to produce these policies comply with their documents. And there has to be some level of onus on the insurance producers to do that. Isn't Travelers a necessary party, then? No. We don't have a claim against Travelers. If we wanted to pursue a claim against Travelers, we certainly had the opportunity to do so. But merely because we had a potential claim against them and chose not to pursue it, doesn't make them a necessary party. Their interests are no different than any other insurance company in the state of Illinois who's ever issued a policy that doesn't comply with our interpretation of the Condo Act. Thank you, Your Honor. Thank you, sir. Mr. Greenberg. I'd like to make a few points during my time here. With respect to Justice Zinoff's concern, if we apply this duty that's drafted by the legislator that's negative, in the negative, in the passive voice, it places a significant duty upon an insurance producer when that producer is not mentioned at all within the Illinois Condominium Property Act. And is governed by the Illinois Insurance Code already. The term deliver is a term that we need to view within the entire statute. Illinois courts have noted that words and phrases must not be viewed in isolation, but considered as a whole in light of the statute. That's exactly what the court in Citizens in Florida did. It didn't simply look directly at those words. It looked at that in the context of the entire statute in Florida. And it noted that to read this in isolation would be to undermine what was the actual intention of the Florida legislator when it created the Condo Act in Florida. The same, too, applies in Illinois. If we look at the entire Condominium Property Act, an act that was created to govern, which the Condo Association concedes, govern Condo Associations through the elected board of managers, then it makes no sense to then impose a significant burden upon an insurance producer under this section 12 of the Condominium Property Act when there's no mention of the word insurance producer throughout the act. The word deliver is a word that I know we've talked a lot about today, but it's a word that has a common meaning based on the entire Condominium Property Act. Could UPS deliver? Could a mailman deliver? Could the Condo Association deliver something to the board of managers? And other sections of the Condominium Property Act use that word deliver. There's nothing specifically defined within the Illinois Condominium Property Act that talks about that word deliver being associated with an insurance producer. Well, what about the word issue, though? I mean, let's focus on that for a minute. Your Honor, the word issue is utilized throughout the Illinois Condominium Property Act. I think a form of issue is utilized 26 times. I did a word search for it last night. In the general sense, insurance companies are the individuals who issue policies of insurance. That's the generally common, understanded phrase. However, if there was an intention to place a burden on an insurance company, it seems reasonable that there would be reference to the insurance company within the statute or that they would have incorporated this or made this part of the Illinois Insurance Code. We have to view this in the context of the entire Condominium Property Act. And I believe when we do so, it shows that there's no duty placed upon an insurance producer. There's other duties placed upon an insurance producer, and those are contained within the Illinois Insurance Code. You would agree there's a duty under the Placement Act, correct? There is a duty under the Placement Act. That's a duty of ordinary care. It's ordinary care and skill and procurement of a policy of insurance. So why shouldn't a producer be aware of this and at least counsel clients regarding this provision? Your Honor, with respect to guiding clients or insurers, what has been alleged in this complaint by the Condo Association, within count two of their complaint, is that the insurance producer failed to procure a Condo Act-compliant policy of insurance. We haven't, you know, underwent discovery in this case, but there was an ordinance or law coverage of a million dollars procured. So, you know, I'm speculating at this point, but there was obviously a discussion that this, that was requested by the insurance, the Condo Association, that we would like this type of coverage. And that coverage wasn't provided. Counsel states that even if they counseled him to get 1.3 and he said no, that the insurance producer would still be liable because he should have either convinced him of 1.3 or be walked away. So even though you exercise ordinary skill as required, he's saying you're still going to be liable. And I disagree with that, Your Honor. I think the duty is placed upon the insurance producer to apply ordinary skill. There's no duty to comply with this Condo Act. And I think that's where the distinction lies. The vehicle code does indicate that the insurance policy shall be issued in amounts no less than the minimum amount set forth, blah, blah, blah. I mean, it does use the word issue. And would you agree, again, I understand your argument that the insurance code is mentioned in that statute, but would you agree that that 7601 of the Illinois Vehicle Code puts a duty on insurance producers? Yes, it does, Your Honor. It does because it mentions and incorporates the Illinois Insurance Code. Which also, in that code, has provisions regarding vehicle insurance on it. It does, Your Honor, yes. So it's really a dual duty under both acts. Based on how the statute is written and its incorporation, I agree with that, Your Honor. All right, we'd like to thank the attorneys for their arguments today. The case will be taken under advisement. And we are recessed.